IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2025

### STATE OF TENNESSEE v. MARTY RAY ROUSE

**Appeal from the Criminal Court for Hancock County**
**Nos. 22CR74, 19CR100, 23CR29        Alex E. Pearson, Judge**

_____

### No. E2024-01069-CCA-R3-CD

_____

Defendant, Marty Ray Rouse, appeals the trial court's judgment revoking his probation and ordering him to serve his full sentence in confinement after Defendant admitted to violating his probation. Defendant asserts the trial court abused its discretion by focusing on Defendant's past criminal history and failing to apply the correct legal standard in determining the consequence of Defendant's probation violation. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Brennan M. Wingerter, Assistant Public Defender - Appellate Director, Tennessee District Public Defenders Conference (on appeal); and Rowland Cowan, Rogersville, Tennessee (at hearing), for the appellant, Marty Ray Rouse.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Brad Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual and Procedural Background

In October of 2023, the trial court sentenced Defendant to an effective ten-year sentence after he pleaded guilty to arson, violating the sex offender registry, and two counts of retaliation for past action. The trial court suspended Defendant's sentence and placed

him on supervision.[1]  One of the conditions of Defendant's supervision was that he would not use or possess illegal drugs.  The record reveals that Defendant was released from the Bell County, Kentucky jail on January 23, 2024, after serving time for possession of drug paraphernalia and possession of methamphetamine.  His probation intake in this case occurred three days later on January 26, 2024.  Less than thirty days after his initial intake assessment, on February 22, 2024, Defendant tested positive for methamphetamine, oxycodone, and oxymorphone.  He later tested positive for methamphetamine on second drug screen on March 8, 2024.  In April of 2024, Defendant's probation officer submitted a report detailing the two failed drug screens, and the trial court issued a warrant for Defendant's arrest.  Defendant was arrested a few days later and held without bond.

Defendant admitted the violation during a June 2024 revocation hearing and requested to continue his probation in a drug rehabilitation facility.  Defendant's counsel stated that he believed that Defendant's probation officer would not oppose rehabilitation; however, the officer was not present for the hearing.  To support his request, Defendant argued that this was his first probation violation and that he had not been charged with any new crimes since being placed on probation.  He further argued that he had been fully compliant in wearing an ankle monitor and had passed all previous drug screens.  The State offered no argument during the hearing.

Having found a violation based on Defendant's admission, the trial court fully revoked Defendant's probation and ordered the execution of Defendant's original ten-year sentence.  In placing its factual findings and reasoning on the record, the court noted the three underlying convictions for which Defendant was on probation and stated, "those are just convictions that I'm not comfortable sentencing somebody to rehab for."  The court also stated it was "looking at" Defendant's presentence report and specifically mentioned his convictions for aggravated burglary in 2007, grand larceny in 2011, sexual battery in 2014, and multiple misdemeanors.[2]  Defendant's counsel conceded that with Defendant's prior conviction for sexual battery, he was "ineligible for felony recovery court," which the court acknowledged.  The court stated that based on these circumstances the court was "not in a position to be able to send [Defendant] to rehab."  The court concluded the hearing by

---

[1] The judgments reflect that Defendant was originally sentenced to community corrections rather than probation.  However, at both the revocation hearing and in its subsequent revocation order, the trial court disposed of Defendant's case as if it were a probation revocation.  Further, both parties in their appellate briefing consistently refer to this as a probation revocation and argue the issues accordingly.  Because we apply the same legal principles and two-step analysis to both community corrections and probation revocations, we consider the issues raised as they have been briefed.  *See, e.g.*, *State v. Kees*, No. M2024-00057-CCA-R3-CD, 2024 WL 48221663, at *1, *3 (Tenn. Crim. App. Nov. 19, 2024) (applying the *Dagnan* two-step analysis to revocation of community corrections sentence), *no perm. app. filed*.

[2] The presentence report is absent from the appellate record.

stating, "so with your prior record [and] the fact that you've got three consecutive convictions [in this case] . . . you'll be in custody to serve your sentence." This timely appeal followed.

## II. Analysis

On appeal, Defendant challenges his sentence, arguing that the trial court abused its discretion when it (1) placed too much weight on Defendant's criminal history; (2) applied an incorrect legal standard during the revocation hearing; and (3) failed to consider the nature and seriousness of the present violation relative to Defendant's amenability of future rehabilitation. The State argues that the trial court properly exercised its discretion.[3] We agree with the State.

We review probation revocation decisions under an abuse of discretion standard with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). A trial court's decision is entitled to a presumption of reasonableness only if the trial court has articulated the reasons for its decision on the record and that record is sufficient to provide a basis for meaningful appellate review. *See State v. Pollard*, 432 S.W.3d 851, 862 (Tenn. 2013); *Dagnan*, 641 S.W.3d at 759 (extending *Pollard* to probation revocation decisions). A trial court's findings need not be "particularly lengthy or detailed." *Dagnan*, 641 S.W.3d at 759. If a trial court fails to articulate its findings on the record, then the reviewing court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or . . . may remand the case to the trial court to make such findings." *Id.* If the trial court articulates its findings on the record, then its decision is presumed reasonable and, absent an abuse of discretion, its decision will be upheld. *Id.* "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010); *see Dagnan*; 641 S.W.3d at 758.

---

[3] The State also argues waiver in its brief as to any argument by Defendant as to the existence of his prior convictions because he failed to provide the presentence report as part of the appellate record. The State correctly notes that in the absence of an adequate record, we must presume the trial court's factual findings regarding Defendant's criminal history are supported by sufficient evidence. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). However, we interpret Defendant's argument as a challenge to how the trial court weighed Defendant's criminal history when it determined the consequences of Defendant's violations, rather than a challenge to its existence. Accordingly, we will address the merits of Defendant's arguments.

Upon finding by a preponderance of the evidence that a defendant has committed a non-technical probation violation, the trial judge may revoke and order execution of the original sentence.[4] Tenn. Code Ann. § 40-35-311(e)(2). A trial court's decision to revoke probation involves two distinct analytical steps: whether probation should be revoked in the first place and, if so, what consequence is appropriate. *Dagnan*, 641 S.W.3d at 757. For the first step, "simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden" set forth in *Dagnan*. *Id*. A defendant's admission to a violation is a sufficient basis to support a trial court's decision under *Dagnan's* first prong. *See State v. Evans*, No. E2024-00392-CCA-R3-CD, 2025 WL 354637, at *1, *3 (Tenn. Crim. App. Jan. 31, 2025), *no perm. app. filed.; State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *1, *4 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*.

Once a trial court has determined a violation occurred, it must make a "distinct discretionary decision" to determine the appropriate consequence for the violation. *Dagnan*, 641 S.W.3d at 757. The consequence determination examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation. *See State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024). The trial court may consider relevant factors such as the number of previous revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character, but the trial court is not limited to these factors. *Dagnan*, 641 S.W.3d at 759 n. 5. Consideration of past criminal history is only appropriate in the second step of the *Dagnan* analysis, *see id*., but the trial court may consider a defendant's criminal history, including the underlying convictions for which he is serving probation, to determine the consequence. *State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *1, *3 (Tenn. Crim. App. Dec. 26, 2018) (internal citation omitted), *no perm. app. filed*; *see also Dagnan*, 641 S.W.3d at 759 n. 5. Further, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *1, *3 (Tenn. Crim. App. Feb. 28, 2023) (citation omitted), *perm. app. denied*; *see also State v. Connor*, No. M2024-00778-CCA-R3-CD, 2025 WL 1166508, at *1, *3 (Tenn. Crim. App. April. 22, 2025) (citing Tenn. Code Ann. § 40-35-311(e)(2)), *no perm. app. filed*.

Here, the trial court explicitly stated its reasons on the record for ordering Defendant to serve his original sentence in confinement. Indeed, the trial court noted Defendant's

---

[4] Our statutes distinguish between technical violations and non-technical violations. *Compare* Tenn. Code Ann. § 40-35-311(e)(1), *with* subsection (e)(2). A "technical violation" is any violation that "does not constitute a new felony, new class A misdemeanor, zero tolerance violation as defined by the [Tennessee Department of Correction] community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." Tenn. Code Ann. § 40-35-311(g).

extensive criminal history and the nature of that history, which included convictions for aggravated burglary, grand larceny, sexual battery, and multiple misdemeanors. The court also specifically referenced that Defendant was ineligible for recovery court. Because the trial court stated its reasons for ordering execution of Defendant's original sentence on the record, its decision is presumed reasonable. *See Dagnan¸* 641 S.W.3d at 757.

Defendant first argues that the trial court placed too much emphasis on Defendant's criminal history in deciding the consequence of the revocation. In Defendant's view, because the nature and timing of his past convictions were so attenuated from the present violation, relying exclusively on those past convictions constitutes an erroneous assessment of the proof and thus cannot support the trial court's decision to deny drug rehabilitation and order execution of the original sentence. As Defendant concedes in his brief, however, the trial court is permitted to consider Defendant's prior criminal record as part of its consequence determination. *See Dagnan*, 641 S.W.3d at 759 n. 5. Neither *Dagnan* nor the applicable statutes require the trial court to consider any one specific factor on the record, and Defendant fails to provide any case law to the contrary. *See id*; Tenn. Code. Ann. § 40-35-311(e)(2). Trial courts need not consider every factor nor include findings that are particularly lengthy or detailed. *See Dagnan*, 641 S.W.3d at 757; *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *1, *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. The record shows that the trial court gave weight to Defendant's criminal history and determined that his history warranted execution of the original sentence. This is all that *Dagnan* requires.

Defendant next asserts the trial court applied an incorrect legal standard when it relied on the seriousness of his three 2023 convictions and stated, "those are just convictions that I'm not comfortable sentencing somebody to rehab for." Defendant's argument, however, overlooks the totality of the record. The record is clear that the court considered the seriousness of the 2023 convictions along with his past criminal history dating back to at least 2007. A defendant's criminal history is relevant to a trial court's determination whether to reimpose probation after a violation. *State v. Evans*, No. E-2024-00392-CCA-R3-CD, 2025 WL 354637, at *4 (Tenn. Crim. App. Jan. 31, 2025), *no perm. app. filed*. We conclude the trial court did not abuse its discretion by considering Defendant's criminal history in this case. *See Fleming*, 2018 WL 6787580 at *3 (no abuse of discretion when the trial court considered a defendant's underlying conviction with his criminal history "solely to determine whether the beneficial aspects of probation were being served.").

Finally, Defendant cites *State v. Penny*, No. W2023-009812-CCA-R3-CD, 2024 WL 1803267, at *1, *3 (Tenn. Crim. App. Apr. 25, 2024), *no perm. app. filed*., to argue that the trial court had an affirmative duty to evaluate whether Defendant should continue his probation in a drug rehabilitation facility after failing his drug screens. Specifically,

Defendant argues that the trial court's failure to consider "the nature and seriousness of [Defendant's] present violation and how that impacts Defendant's 'amenability to future rehabilitation' constitutes an inappropriate evaluation under *Dagnan*." We agree that trial courts may consider the nature of a violation relative to the nature of a defendant's past criminal convictions. Likewise, trial courts may consider gaps in a defendant's criminal history. But neither are explicitly required in a particular case because both merely speak to the ultimate inquiry—whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation. Nothing in *Penny*—or *Dagnan* for that matter—requires a trial court to consider specific factors in a specific case. *Penny* merely recites the language of *Dagnan* when it says trial courts "may consider factors relevant to the nature and seriousness of the present violation." *Penny*, 2024 WL 1803264 at *3. Even still, we disagree with Defendant's contention that the trial court "completely ignored the nature of the present violation." In addition to its focus on Defendant's criminal history, the trial court acknowledged Defendant's ineligibility for felony recovery court on the record and that his ineligibility was caused by Defendant's prior sexual conviction.

Admittedly, one of the core purposes underlying alternative sentences is "effective rehabilitation." Tenn. Code Ann, § 40-35-102(3)(C). But included in that same list is the need to restrain defendants with a "lengthy history of criminal conduct." Tenn. Code. Ann. § 40-35-102(3)(B). Regardless, Defendant was "not entitled to a second grant of probation or another form of alternative sentencing." *See Shelton*, 2023 WL 2261081 at *3. As such, the trial court's consideration of Defendant's extensive criminal history supports its decision to impose incarceration.

## III. Conclusion

We conclude that the trial court did not abuse its discretion by ordering Defendant to serve his original sentence in confinement as a consequence of his probation violation. Its decision is presumed reasonable, and nothing in our review of the record overcomes that presumption. Accordingly, we affirm the judgment of the trial court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

- 6 -